UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KATHY R. DUHON, ET AL. | CIVIL ACTION |
| VERSUS | NO: 90-1669 |
| ANN T. TATJE, ET AL. | SECTION: "A" |

### ORDER AND REASONS

On October 22, 2024, the Court held oral argument on the following motions:

1) **Motion for Further Relief, Discovery, and Evidentiary Hearing (Rec. Doc. 220)** filed by "the plaintiffs."

2) **Motion to Substitute Named Plaintiffs (Rec. Doc. 228)** filed by "the plaintiffs."

Both motions are opposed.

The motions were taken under advisement following argument by counsel. (Rec. Doc. 235, Minute Entry).

The motions were filed by counsel with the NAACP Legal Defense and Educational Fund, Inc. ("the LDF") and local counsel, Mr. Gideon Carter, on behalf of "Plaintiffs," who purport to be the original plaintiffs (Hermon Harris, Jr., et al. ) from a desegregation case that was first initiated in 1963—over 61 years ago—and resulted in certain consent decrees/orders that remain in effect today.[1] But given that no person who was a plaintiff in

---

[1] The 1963 desegregation case, which was designated as Civil Action 13,212, is a separate and distinct lawsuit from the captioned case, Kathy R. Duhon, et al., which was filed in May of 1990. *Duhon* was consolidated with the old *Harris* case, which by 1990 had long been closed and concluded in light of the various consent decrees/orders that had been entered to resolve the case. The *Harris* case predated the case numbering system currently used in the federal court system so the consolidated *Harris* and *Duhon* actions both report under the case designation given to the later-filed *Duhon* action, Civil Action no. 90-1669.
    The LDF has confirmed that "the plaintiffs" who are purporting to currently seek relief from

the 1963 case is participating in the matters currently before the Court, and given that no new plaintiff has been added to the *Harris* case since 1963, the St. John the Baptist School Board ("the Board") has raised legitimate questions about who exactly is driving the recent resurgence of litigation in this case.

The docket sheet includes the United States of America as a plaintiff-intervenor in the case but the United States is not a signatory to the pending motions and has not assumed an active role in recent events.

I.

The premise underlying the **Motion for Further Relief, Discovery, and Evidentiary Hearing** filed by the LDF is that the Board is in violation of the desegregation orders/decrees entered in resolving the *Harris* case because the Board continues to operate the Fifth Ward Elementary School ("FWE"), which has a predominately black student body, and which due to its proximity to the Denka Performance Elastomer plant—a plant accused of emitting unacceptably dangerous levels of chloroprene into the surrounding air—constitutes an inferior and unequal facility. The LDF contends that the problem at FWE is exacerbated by the fact that the FWE facility does not have an indoor gymnasium which means that the children who attend the school must play outside during recess.

The Denka plant has certainly gained notoriety in recent years. It has been the subject of multiple lawsuits (federal and state), some of which are still ongoing. Denka has faced scrutiny from the EPA as well as private community lawsuits. Environmental issues surrounding the Denka plant have been raised in many venues and executive agencies

---

the Court are not the *Duhon* plaintiffs from the 1990 lawsuit but rather the *Harris* plaintiffs from the original 1963 lawsuit.

(federal and state).

The ultimate relief that the LDF seeks is for the Court to order the FWE school closed <u>and</u> all of the students reassigned to LaPlace Elementary. But to get to that ultimate relief, the LDF first seeks discovery and an evidentiary hearing. The LDF wanted to close the FWE school prior to the start of the 2024-25 school year but at an in person status conference held on June 20, 2024, the Court informed the parties that the school would not be closed prior to the start of the school year because the start of school was fast-approaching. (Rec. Doc. 222, Minute Entry).

The Court been informed that just days ago, at its November 7, 2024 meeting, the Board approved by a vote of 7 to 4 to close FWE at the end of the 2024-25 school year, thereby mooting for the most part of the relief that the LDF was seeking in its **Motion for Further Relief, Discovery, and Evidentiary Hearing**. (Rec. Doc. 236, Status Report). The Board voted, to reassign the FWE students to LaPlace Elementary and to East St. John Prepatory School even though the LDF wanted all of FWE's students reassigned to LaPlace Elementary.

When Hermon Harris, Jr. and his co-plaintiffs filed suit against the Board in 1963, like many lawsuits of its time it sought to challenge the prior *de jure* segregated system of public schools that were being operated in the parish.[2] There was little to dispute insofar as the school system was racially segregated by law. Various consent decrees and orders were entered numerous times over the years (1966, 1967, 1969, 1992) in order to

---

[2] The *Harris* case predated electronic court record keeping. This Court does not have a copy of the old paper court record—it is in the custody of the archives where old court records are sent when cases are long-closed. In October 1990, a copy of the manually-typed docket sheet was scanned into the *Duhon* docket sheet. (Rec. Doc. 13).

desegregate the school system in St. John the Baptist Parish.[3] The consolidated *Harris* and *Duhon* actions were reassigned to this Court via random reallotment by order of Chief Judge Vance on July 28, 2009. (Rec. Doc. 100). A third consent judgment was approved by the Court and entered on August 26, 2021 pertaining to the Emily C. Watkins Elementary School. (Rec. Doc. 113).

But the issues currently being raised in the LDF's **Motion for Further Relief, Discovery, and Evidentiary Hearing** pertain to the orders and consent decrees entered in the original *Harris* matter. This is because the desegregation orders that the LDF is accusing the Board of violating were entered as part of the resolution of the *Harris* case. The case has been closed for decades but the LDF asserts without contradiction that all of the old desegregation decrees/orders entered in the case pertaining to the school system in St. John the Baptist Parish are extant, remain in effect, and the Board remains subject to the requirements of those decrees/orders because there has never been a judicial finding that the Board has attained "unitary status" so as to terminate court oversight of the school system in the parish.

Throughout the years following the reassignment of *Duhon* (with the *Harris* case incorporated into it) to Section A, the Court has received regular formal status reports and various consent motions but nothing contested until last summer when on July 14, 2023, the LDF on behalf of "Private Plaintiffs Hermon Harris, et al." asked for an emergency status conference to discuss concerns that children attending the FWE school face a heightened risk of cancer due the school's proximity to the Denka plant. (Rec. Doc. 198, Status Report). The LDF explained that its attorneys and the Board had been in

---

[3] None of these orders and decrees are available to the Court in the electronic record but some have been photocopied and attached to the memoranda.

agreement that FWE should be closed prior to the commencement of the 2023-24 school year but then the Board had abruptly changed its position. The school was perhaps going to close instead prior to the 2024-25 school year but the LDF thought that was too long to wait.[4]

In light of the request for an emergency status conference, the Court held two telephone conferences and one in person conference. At the July 27, 2023 telephone

---

[4] At the time that the briefing was submitted prior to the oral argument, the Board was not committed to closing FWE except that the Board advised that is was currently preparing a comprehensive study for the <u>entire</u> school district that may result in some closings, consolidations, or realignments, at one or more schools in the district—that study was expected to be completed in the fall of 2024—then a proposal would be set forth that may resolve concerns related to FWE.

Although the Board's reasons for refusing to close FWE prior to the 2024-25 school year, whether the school should close at all, and the fallout from closing the school were not at issue during the oral argument, for completeness it bears noting that the Board raised concerns that closing FWE as the LDF seeks to do is a piecemeal approach to any problems in the district that will have farther reaching effects than simply closing one school—which is something the Board is convinced that the LDF is actually trying to do. The Board points out that if FWE is closed then in effect East St. John Preparatory School will close because FWE is its only feeder school. The Board accuses the LDF of having this second closure as an ulterior motive. And furthermore, the Board is adamant that if the LDF's chosen remedy—sending all of the FWE students and staff to LaPlace Elementary is implemented—then there will be no desegregation benefits from such a move because the black to white ratio at LaPlace Elementary would go way up which is actually a backwards step in the desegregation effort.

At the oral argument the attorneys for the Board informed the Court that at the November 7, 2024 meeting the Board would take up the issue of closing FWE school in accordance with a 5-0 recommendation to do so, thereby possibly mooting the motions currently before the Court. The LDF's counsel was not particularly optimistic regarding this assertion given the Board's alleged reneging on previous assurances regarding plans to close FWE. The Court notes that the Board's meeting agenda for that meeting included the following item of New Business for public comment:

> Strategic Planning Committee - As part of the initial phase of the Strategic Planning Committee's Key Performance Indicators for the 2025-2026 School Year, the Committee requests Board approval to merge Fifth Ward Elementary School with East St. John Preparatory on the ESJP campus, creating a K-8th grade configuration. The merger would include a redistricting of Fifth Ward Elementary, East St. John Preparatory and LaPlace Elementary School, with the Fifth Ward Elementary students that live in close proximity of LaPlace Elementary, being redistricted to attend LaPlace Elementary School.(Requires action).

St. John the Baptist Parish Public Schools Board Meeting Agendas, https://www.stjohn.k12.la.us/apps/pages/index.jsp?uREC_ID=526222&type=d&pREC_ID=1041966 (last visited Nov. 6, 2024).

Again, as noted above, at its November 7, 2024 meeting, the Board voted to close FWE at the end of the 2024-25 school year.

conference, the Court questioned why the Board couldn't simply close FWE at mid-school year (because the Board attorneys pointed out the logistical impossibility of closing the school so close to the start of the fall semester). (Rec. Doc. 202, Minute Entry). Two footnotes included in the minute entry from that telephone conference have hit a nerve for both parties:

> Footnote 2 of the 7/27/2023 Minute Entry states (emphasis added):
>
>> Although not discussed at the conference, ***standing would also likely be an obstacle to obtaining, as part of this case, the coercive relief suggested by the Status Report. The "Private Plaintiffs" on whose behalf the Status Report and Request for Emergency Status Conference (#198) was filed, are Hermon Harris, Jr., et al., the original plaintiffs from the civil action filed in 1963, as well as the plaintiffs to the civil action filed in 1990, a case filed over 33 years ago. It would seem highly unlikely that any of them would have children attending FWE in 2023, and therefore no plaintiff in this lawsuit can claim the injury-in-fact necessary for standing to move for coercive relief not related to the consent decree.*** While the Court retains jurisdiction to oversee enforcement of the desegregation consent decree regardless of the status of the plaintiffs who originally filed the desegregation lawsuit, coercive relief to compel closure of a school based not on segregation but on environmental safety concerns would require that at least one of the Private Plaintiffs have standing to move for such relief. And of course, it is unclear to the Court what the basis for federal subject matter jurisdiction over a coercive claim to immediately close the FWE school would be.
>
> Footnote 3 of the 7/27/2023 Minute Entry states (emphasis added):
>
>> When the Court mentioned possible closure after the fall semester, the School Board pointed out the likely disruption that would result from a mid-school year closure/reassignment plan. While the Court maintains that the safety of the children should be the paramount concern of all involved, the possibility of disruption, which could negatively impact some students (and their parents) more than others, may cause the parents involved to oppose such an interim plan. ***It is not permissible to have plaintiffs who are not impacted by the problem at hand, and therefore are "plaintiffs" in name only, seeking relief that may negatively impact parents and children who are not parties to this case.***

A follow-up telephone conference was scheduled for August 30, 2024, prior to which the Court had hoped to receive a joint proposal from the parties to close FWE and therefore moot the need for possible coercive relief.

No joint proposal to close FWE was received.

The August 30, 2023 follow-up telephone conference went forward but the parties had not been able to agree to a joint proposal regarding the fate of FWE. (Rec. Doc. 204, Minute Entry). The Court declined to schedule a follow-up conference because it was clear that no joint proposal would be forthcoming and as of that time no motion for coercive relief was pending.

It wasn't until June 12, 2024, that the LDF filed the **Motion for Further Relief, Discovery, and Evidentiary Hearing** and this triggered an in person status conference on an expedited basis because the LDF wanted to close the FWE school prior to the start of the 2024-25 school year. The in person status conference was held on June 20, 2024, but the Court informed the parties that the school would not be closed prior to the start of the school year because the start of school was fast-approaching.

The LDF attorneys had brought to the status conference what was characterized as limited discovery directed at the issues raised in the **Motion for Further Relief, Discovery, and Evidentiary Hearing** (neither the Court nor defense counsel had seen these discovery requests prior to the status conference). The Court instructed the LDF's attorneys to proceed with serving their discovery requests on the defendants. (Rec. Doc. 222, Minute Entry). Defense counsel accepted service of the discovery requests at the status conference as a courtesy to move things along. A follow-up telephone conference

was scheduled for August 1, 2024.[5]

The Court cancelled the August 1, 2024 follow-up phone conference when it received a letter dated July 25, 2024 from the LDF's counsel asking the Court to convert the follow-up phone conference to an in person status conference and order the Board members to attend in person because the Board had not responded to discovery requests and seemed to possibly be "stonewalling these desegregation proceedings." The Court did not reset the follow-up telephone conference.

As it turns out, once the Board's attorneys actually reviewed the discovery requests, they determined that those discovery requests weren't really limited and tailored to the issues raised in the **Motion for Further Relief, Discovery, and Evidentiary Hearing** at all, but instead were extremely broad and leaning toward "fishing" beyond the relief sought in the pending motion.[6]

Shortly thereafter the LDF filed the **Motion to Substitute Named Plaintiffs** in which the LDF is seeking to address the standing concerns noted in Footnotes 2 and 3 of the July 27, 2023 Minute Entry quoted above, and in the Board's opposition to the **Motion for Further Relief, Discovery, and Evidentiary Hearing**. The LDF seeks to put an actual plaintiff before the Court.

---

[5] It has become apparent that both sides interpreted the Court's instruction to the LDF at the June 20, 2024 status conference to proceed with serving its discovery as a directive from the Court "authorizing" discovery in this case. This is not what the Court intended.

[6] The Board has attached the LDF's discovery to its opposition and asks the Court to rescind its "authorization" to the LDF to proceed with discovery. The Court agrees that the scope of the LDF's discovery requests far exceeds the issues presented in the pending **Motion for Further Relief, Discovery, and Evidentiary Hearing**. The discovery seeks information about compliance going back to 1965 and 1992; the 30(b)(6) notice wants the Board to produce someone to testify about any and all efforts in this desegregation case from 1963 to present; the LDF has noticed 15 depositions. At the oral argument the Court relieved the Board of any obligation to respond to the LDF's discovery request pending further orders of the Court.

**II.**

The relief that the LDF seeks on behalf of "Plaintiffs" in its **Motion for Further Relief, Discovery, and Evidentiary Hearing** is for the Court to order the FWE school closed and all of the students and staff reassigned to LaPlace Elementary.

According to the LDF: 334 students currently attend the FWE school; 77.2 % Black; 16.8 % Hispanic; 5.1% White. 79.6% of the faculty assigned to the school is Black. Very few students live in the school's neighborhood. Thus, FWE is not a neighborhood school and many of the Black children who attend the school are bussed in from neighborhoods that are closer to LaPlace Elementary. Even for the 25 students who do live a mile or less from the Denka plant, the LDF contends that relocating them away from the plant during school hours will reduce their exposure times.

The legal theory underlying the relief sought is that continuing to operate a school, more specifically a predominately Black school, at the current location near the Denka plant, violates the desegregation consent decrees/orders that were entered in the *Harris* case and that remain in effect to this day. The LDF also claims that continuing to operate the school at its current site violates "the plaintiffs'" constitutional rights. Specifically, due to its proximity to the Denka plant, the FWE school constitutes an "inferior" and "unequal" facility, and since "equalization" cannot be attained in light of the proximity to the Denka plant, the school must be closed per the mandates of the consent decrees/orders entered in *Harris*.

In response, the Board points out that the original (since 1952) all-Black school that was on the site where FWE now sits was torn down and rebuilt in 1993. The Denka plant was built in 1968 and so it actually pre-existed the new school being built on the old site.

The Board points out that all of this was done—meaning putting FWE at its current location in proximity to Denka—with consent and under the auspices of the extant desegregation orders with no issues raised until now. In fact, the Board points out that in 2017 it filed an unopposed motion to reorganize the grade levels at FWE, which this Court granted and no one raised any concerns with the Denka plant. The Board surmises that the LDF actually has hidden motives to close not only the FWE school but also East St. John Preparatory Academy, which shares the same attendance zone.

The Board argues that the Court lacks subject matter jurisdiction over the environmental issues being raised because the prior *Harris* case was about de jure segregation, not environmental issues. As the Board points out, the Denka plant was constructed in 1968 which was several years after *Harris* was filed. Thus, the Board asks how a new environmental issue could possibly be a vestige of the prior de jure segregated school system that the *Harris* plaintiffs sought to dismantle? The Board argues that the Court should not allow the LDF to raise environmental issues for the first time in a 61-year old case whose purpose was to dismantle the prior de jure segregated school system.

For simplicity at this juncture, the Court *assumes without deciding* that the LDF has accurately described the mandates of the desegregation consent decrees/orders entered in response to the *Harris* litigation that remain in effect today. Since it appears to be undisputed that the Board remains subject to the desegregation decrees/orders that were entered over the years for the purpose of eliminating de jure segregation of the schools in the parish, the Court will also *assume without deciding* that continuing to operate FWE at its current situs, and busing minority students to attend school at FWE, constitutes violations of the extant desegregation orders.

Based on the Board's recent decision to close FWE prior to the start of the 2025-26 school year, the Court considers the relief sought in the LDF's **Motion for Further Relief, Discovery, and Evidentiary Hearing** to be moot. Whether the violation is characterized simply as operating a predominately Black school at the FWE situs, or as busing minority children away from their neighborhoods to attend school at the inferior FWE school, the issue of those alleged violations is moot given the school's imminent closure. Whether the current reassignment plan, which includes East St. John Prepatory School (the LDF wanted all of FWE's students reassigned to LaPlace Elementary) is a problematic is not an issue currently before the Court.

Even if some aspect of the LDF's **Motion for Further Relief, Discovery, and Evidentiary Hearing** survived mootness, the Court remains persuaded that it lacks subject jurisdiction to proceed to act on the motion because the LDF filed the **Motion for Further Relief, Discovery, and Evidentiary Hearing** without having an actual plaintiff before the Court.

Federal courts are courts of limited subject matter jurisdiction with power restricted by Article III of the Constitution to resolving disputes that constitute "Cases" and "Controversies." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 378 (2024); *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022) (citing U.S. Const. art. III, § 2; *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A lawsuit is not a "Case[ ]" or "Controvers[y]" within the subject matter jurisdiction of a federal court unless the plaintiff can prove that he has standing to bring suit. *Id.* (citing *Lujan*, 504 U.S. at 560–61). To have standing to sue in

federal court, a plaintiff must show that he has suffered an injury "fairly traceable" to the defendant's conduct which the court's judgment would likely redress. *Deanda v. Becerra*, 96 F.4th 750, 755–56 (5th Cir. 2024) (citing *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 272 (5th Cir. 2021)); *Clapper*, 568 U.S. at 409.

Implicit in the requirements for Article III standing, which is necessary to subject matter jurisdiction in federal court, is that there be a plaintiff on whose behalf relief is being sought. The controlling jurisprudence mandates that the named plaintiff who brings the lawsuit must have legal standing in order for a federal court to have subject matter jurisdiction over the complaint, but that issue only arises when you have an actual person as the party-plaintiff. Without an actual plaintiff involved there is no Article III case or controversy and consequently no subject matter jurisdiction.

The LDF filed the **Motion for Further Relief, Discovery, and Evidentiary Hearing** on behalf of "Plaintiffs," who purport to be Hermon Harris, Jr. and his co-plaintiffs from the original lawsuit filed in March 1963. (Rec. Doc. 220-1, Memorandum in Support at 2). But neither Hermon Harris, Jr. nor any co-plaintiff of his from 1963, is actually before the Court pursuing the relief prayed for. The Court is not persuaded that the LDF—which is a legal non-profit organization that provides legal representation to aggrieved parties—it is not itself an aggrieved party with a claim or injury of its own to pursue, has the authority to seek coercive relief against the Board in the name of persons (Hermon Harris, Jr., et al.) who obtained the relief that they sought decades ago but who are no longer before the Court. If any of those original plaintiffs are alive and could be located, it is far from clear that they would satisfy the requirements of Article III standing.

So the Board legitimately questions who the LDF is representing in the current

controversy and who authorized the LDF to move for relief in the name of the *Harris* plaintiffs from 61 years ago to seek to close FWE. The Board finds this question particularly puzzling because in 3 different community meetings held at the LDF's behest to discuss closing FWE, the Board states that there was near unanimous opposition from the citizenry to the closure and relocation of FWE (the LDF disputes this statement). The Board complains that it has no idea who the actual plaintiff is that it is having to litigate against.

To the Court's knowledge, desegregation cases do not present an exception to the requirement for legal standing, which goes to subject matter jurisdiction in federal court. There can be no legal standing without an actual plaintiff. The issue is not whether the *Harris* plaintiffs from 1963 had legal standing to pursue the relief that they sought to obtain 61 years ago. Surely, they did. But the *Harris* plaintiffs are not before the Court at this time so the issue of their standing to pursue the relief that they sought in 1963 is irrelevant to the current matters pending in 2024. The fact that a desegregation order that remains extant was entered in litigation that the *Harris* plaintiffs pursued 61 years ago does not create a perpetual "nominal" plaintiff whose name a legal non-profit can invoke when trying to obtain coercive relief in a federal court. It likewise does not create standing in perpetuity. It is undisputed that the extant *Harris* orders and decrees continue to bind the Board, and those orders continue to inure to the benefit of the school children in the parish. But when coercive relief is sought in 2024 based on an alleged violation of those orders/decrees—and to be sure the coercive relief being sought by the LDF is very specific—there must be an actual plaintiff before the Court on whose behalf that relief is being sought and that plaintiff must have standing. No plaintiff, means no standing and therefore no subject

matter jurisdiction in federal court.[7]

In sum, even if some aspect of the LDF's **Motion for Further Relief, Discovery, and Evidentiary Hearing** survived mootness following the Board's recent decision to close FWE, without a "real" plaintiff who has legal standing to pursue the relief being sought, the **Motion for Further Relief, Discovery, and Evidentiary Hearing** must be denied without prejudice.

## Motion to Substitute Named Plaintiffs

After the Board filed its opposition to the **Motion for Further Relief, Discovery, and Evidentiary Hearing**, which seized upon the doubts regarding standing that the Court had raised in its July 27, 2023 Minute Entry, the **Motion to Substitute Named Plaintiffs** was filed. This motion is clearly an attempt to bring an actual plaintiff before the Court, which as explained above, is a required first step in satisfying the Article III standing requirements necessary to subject matter jurisdiction in federal court. But none of the persons who are seeking to join this lawsuit to prosecute the **Motion for Further Relief, Discovery, and Evidentiary Hearing** have Article III standing because none of the proposed plaintiffs have a particularized injury in fact attributable to the ongoing operation of the FWE school sufficient to support standing.

These are the proposed new plaintiffs:

> Ms. Green is Black and is the parent of a minor child who is Black (S.N.), and who currently attends East St. John High School, which is operated by the Defendants and located in St. John the Baptist Parish, Louisiana ("St. John Parish"). Ms. Green herself attended Fifth Ward Elementary in St. John Parish, as a child.
> Ms. Smith is Black and is the parent of two minor children who are

---

[7] The parties have gone down the proverbial rabbit hole over the question of whether the *Harris* case was adjudicated as a pre-Rule 23 class action. The Court remains persuaded that the LDF cannot pursue the relief it seeks in 2024 without having an actual plaintiff before the Court. The question of class status in 1963 is not determinative.

Samoan American and Native American (B.F. and B.F.), and who both currently attend Emily C. Watkins Elementary School, which is operated by Defendants and located in St. John Parish, Louisiana. Previously,

Ms. Smith's children attended Fifth Ward Elementary in St. John Parish. Ms. Smith herself attended Fifth Ward Elementary in St. John Parish, as a child.

Ms. Watkins is Black and is the great-grandparent and guardian of a minor child who is Black (J.W.), and who currently attends East St. John High School, which is operated by Defendants and located in St. John Parish, Louisiana.

Movants are Black parents of minority schoolchildren currently enrolled in schools operated by Defendants. Like the Original Plaintiffs, Movants seek relief on their own behalf, on behalf of their minor children, and on behalf of all other Black parents and children in St. John Parish, Louisiana who are similarly situated and affected by the actions and policies of Defendants. Movants are also citizens of the United States and the State of Louisiana, and residents of St. John Parish, Louisiana.

To establish Article III standing, the plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Perez*, 45 F.4th at 821 (citing *TransUnion*, 594 U.S. at 423). Injury in fact is the "[f]irst and foremost" of standing's three elements. *Spokeo*, 578 U.S. at 338 (quoting *Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 103 (1998)). To establish injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (citing *Lujan*, 504 U.S. at 560). A "concrete" injury must be "*de facto*," which means that it must actually exist. *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). For an injury to be "particularized," it "must affect the plaintiff in a personal or individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

Standing ensures that the plaintiff is not a mere bystander to the dispute but instead has a "personal stake" in it. *Alliance for Hippocratic Med.*, 602 U.S. at 379 (citing

*TransUnion*, 594 U.S. at 423). The standing doctrine serves to protect the "autonomy" of those who are most directly affected so that they can decide whether and how to challenge the defendant's action. *Id.* at 379-80 (citing *Valley Forge Christian College v. Americans United for Separ. of Church & State, Inc.*, 454 U.S. 464, 473(1982)).

Further, the plaintiff must establish the elements of standing for each claim being made and for each form of relief being sought. *Perez*, 45 F.4th at 821 (quoting *TransUnion*, 594 U.S. at 431). For example, the plaintiff may have standing to pursue damages (a remedy that constitutes compensation for injuries suffered in the past) but not injunctive relief (a remedy that is prospective in nature) or vice versa. *Perez*, 45 F.4th at 824; *see TransUnion*, 594 U.S. at 431 (citing *Davis*, 554 U.S. at 734; *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). When a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury. *Alliance for Hippocratic Med.*, 602 U.S. at 381 (citing *Clapper*, 568 U.S. at 409).

None of the proposed plaintiffs have children that actually attend FWE school and therefore can allege a particularized injury in fact from the Board's ongoing operation of the school. None of the proposed plaintiffs have children who are being bused from their neighborhoods to the FWE school. That some of the parents are themselves former students of the school does not give them a current injury in fact or likelihood of future injury traceable to the Board's ongoing operation of the school. That they are Black and live in the parish is not enough because the injury in fact (which is missing) must be particularized to the plaintiff. Merely being a parent or guardian of a Black student in the parish is simply not enough to confer standing to seek an injunction

to close the FWE school.

Assuming that there was a class certified in the 1960s with Mr. Harris as the lead plaintiff, and assuming that every member of the class had standing in the 1960s, that says nothing about whether the LDF's new plaintiffs who want to join this lawsuit to prosecute a claim for coercive relief have suffered in injury in fact particularized to them, which is what standing requires. The relief being sought in 2024 is very specific. The movant must have standing to sue for that relief, and the requirements of standing, which go to subject matter jurisdiction, cannot be circumvented by filing a motion in a 61 year old lawsuit as opposed to filing a new lawsuit. The Court is not persuaded that every Black citizen in the parish has Article III standing to ask a federal court to close the FWE school and send its current student body to LaPlace Elementary.[8]

In sum, the Court denies the **Motion to Substitute Named Plaintiffs** because the proposed new plaintiffs do not have legal standing to pursue the relief being sought. Granting the motion would be futile.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Substitute Named Plaintiffs** is **DENIED**.

---

[8] Both the problem with having no actual plaintiff and the standing problem for the proposed plaintiffs is particularly glaring when considering the allegation that the continued operation of FWE (and associated busing of students) is a violation of "the plaintiffs'" constitutional rights. Only the person whose constitutional rights have been violated can seek redress in court to vindicate that right—the claim is personal. The Article III standing requirements apply with equal force to claims brought pursuant to 42 U.S.C. § 1983. *Tenth Street Resid. Assoc. v. City of Dallas*, 968 F.3d 492, 503 (5th Cir. 2020) (citing *United States v. Hays*, 515 U.S. 737, 743 (1995); *Warth v. Seldin*, 422 U.S. 490, 514 1975)).

The LDF cannot seriously contend that the *Harris* plaintiffs from 61 years ago are having their constitutional rights violated in 2024 by the ongoing operation of the FWE school. And the Court is at a loss to understand how the continued operation of the FWE school and the busing of other parents' children to the school could possibly violate the constitutional rights of any of the proposed plaintiffs who seek to substitute in as parties.

**IT IS FURTHER ORDERED** that the **Motion for Further Relief, Discovery, and Evidentiary Hearing Motion for Further Relief, Discovery, and Evidentiary Hearing** is **DENIED** as moot, and alternatively **DENIED** without prejudice at this time because the Court lacks subject matter jurisdiction to proceed.

November 18, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE