UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHY R. DUHON, ET AL.                          CIVIL ACTION

VERSUS                                           NO: 90-1669


ANN T. TATJE, ET AL.
                                                 CONSOLIDATED WITH

HERMON HARRIS, JR., ET AL.                       NO. 13,212

VERSUS

ST. JOHN THE BAPTIST PARISH
SCHOOL BOARD                                     SECTION: "A"


**ORDER AND REASONS**

The following motions are before the Court: **Motion to Substitute Named Plaintiffs (Rec. Doc. 263)** filed by the NAACP Legal Defense and Educational Fund, Inc. ("the LDF") and local counsel, Mr. Gideon Carter, on behalf of "Plaintiffs."[1]; **Motion to Dismiss the Duhon Case and Vacate All Orders (Rec. Doc. 251)** and **Cross-Motion to Clarify Representation, Dismiss the Harris Case, and Vacate All Orders (Rec. Doc. 254)** filed by the St. John the Baptist Parish School Board ("the Board"). All motions are opposed.[2] The motions, submitted for consideration on June 25, 2025, are

---

[1] "Plaintiffs" refers to the original plaintiffs (Hermon Harris, Jr., et al. ) from the Harris desegregation case that was filed in 1963—62 years ago. "Plaintiffs" does not include anyone who later sued in the separate Duhon case.

[2] The United States, as plaintiff-intervenor, takes no position on any of the motions.

before the Court on the briefs without oral argument.[3] For the reasons that follow the motions are denied.

## I.

Well over a half century ago, the Board maintained and operated a *de jure* biracial school system in which students and staff were assigned to schools on the basis of race. In 1963, Mr. Hermon Harris, Jr. and several co-plaintiffs filed a lawsuit in the Eastern District of Louisiana seeking relief against the Board to enjoin it from continuing to operate a compulsory biracial school system. (Rec. Doc. 13, Docket Master at 1). The Harris complaint was designated as Civil Action 13,212 under the old case numbering system that predated the case numbering system currently used in the federal district courts.

The Harris lawsuit was successful. On July 18, 1969, United States District Judge Fred J. Cassibry entered a desegregation order ("the 1969 Desegregation Order"). After the case returned from the court of appeals, the manually-typed docket sheet indicates some minor perfunctory activity until the case was closed in 1972. (Docket Master at 7). To date, the 1969 Desegregation Order has not been vacated.[4]

_____

[3] Although no request for oral argument has been filed, the LDF included a request for an in person status conference in its Opposition to the Board's Cross-Motion in order to help resolve the issues in the case. (Rec. Doc. 265, Opposition at 1). The Court is persuaded that neither oral argument nor a status conference is necessary to resolve the issues presented in the parties' motions.

[4] The Harris case pre-dated electronic record keeping. None of the court records from the Harris case are available in electronic format in the CM/ECF system. The Court does not have a copy of the paper record for the Harris case. The Court notes that in 1990 Judge Livaudais ordered that the paper record for Harris would be kept in his chambers rather than in the Clerk's Office. (Rec. Doc. 13, Docket Text). The Court assumes that the paper record was ultimately archived in an out-of-state federal facility because the paper record is no longer located in the Eastern District of Louisiana.

In May of 1990 Kathy R. Duhon and several co-plaintiffs filed a new lawsuit against the Board which was designated under the current case numbering system as 90-1669, and allotted to United States District Judge Marcel Livaudais. The Duhon complaint is not available in the electronic court record but it is understood that the claims in the Duhon case implicated the 1969 Desegregation Order from the Harris case. Therefore, Judge Livaudais ordered that all further proceedings whether for Harris or Duhon be conducted under Duhon's 90-1669 case designation, and that certain orders from Harris be made a part of the Duhon record. (Rec. Doc. 13). The claims in Duhon were resolved via a consent judgment entered on November 20, 1992, and the case was closed.[5] (Rec. Doc. 53).

Nothing of a contested nature had occurred in the Harris/Duhon matters for decades until July of 2023. In July of 2023, the LDF on behalf of "Plaintiffs" (see note 1 above) began seeking this Court's intervention to compel the Board to close the Fifth Ward Elementary School ("FWE"). (Rec. Doc. 198, Status Report). The premise underlying the LDF's position was that FWE, which had a predominately black student body, constituted an inferior and unequal facility due to its proximity to the Denka Performance Elastomer plant—a plant accused of emitting unacceptably dangerous levels of chloroprene into the surrounding air. The LDF argued that by continuing to operate FWE, the Board was in violation of the 1969 Desegregation Order entered in resolving the Harris case, as well as other orders and decrees. Recently, for reasons

_____

[5] The Duhon case also predated electronic record keeping so nothing prior to 2002 is available in the CM/ECF system. The Court does not have a copy of the paper record for anything filed in Duhon before 2002.

unrelated to FWE's proximity to the Denka plant, the Board adopted a plan to close

FWE, and to reassign its students between East St. John Prep and LaPlace Elementary

School.[6] The LDF on behalf of "Plaintiffs" opposed the Board's plan for FWE. On May 9,

2025, the Court approved the Board's plan to close FWE and to reassign its student

body between East St. John Prep and LaPlace Elementary School. (Rec. Doc. 256,

Order and Reasons). That decision is now final.

      When the LDF first brought the FWE controversy to the Court's attention in July

of 2023 (although no formal motion for coercive relief had been filed at the time), the

Court held a telephone conference and noted the possibility of a standing problem that

could deprive the Court of subject matter jurisdiction to proceed. In its Minute Entry from

the telephone conference the Court stated:

> [S]tanding would also likely be an obstacle to obtaining, as part of this
> case, the coercive relief suggested by the Status Report. The "Private
> Plaintiffs" on whose behalf the Status Report and Request for Emergency
> Status Conference (#198) was filed, are Hermon Harris, Jr., et al., the
> original plaintiffs from the civil action filed in 1963, as well as the plaintiffs
> to the civil action filed in 1990, a case filed over 33 years ago. It would
> seem highly unlikely that any of them would have children attending FWE
> in 2023, and therefore no plaintiff in this lawsuit can claim the injury-in-fact
> necessary for standing to move for coercive relief not related to the
> consent decree. While the Court retains jurisdiction to oversee
> enforcement of the desegregation consent decree regardless of the status
> of the plaintiffs who originally filed the desegregation lawsuit, coercive
> relief to compel closure of a school based not on segregation but on
> environmental safety concerns would require that at least one of the
> Private Plaintiffs have standing to move for such relief.

(Rec. Doc. 202, 7/27/2023 Minute Entry at 2 n.2).

      Nothing occurred until the following summer when the LDF filed a Motion for

---

[6] The Board explained that it was closing the school of its own initiative following a
comprehensive study for the entire school district.

Further Relief, formally moving for coercive relief against the Board seeking to have the FWE school closed and its students reassigned to LaPlace Elementary only. (Rec. Doc. 220, Motion for Further Relief). The LDF's motion purported to be brought on behalf of "Plaintiffs," again referring to the original Harris plaintiffs from 1963, even though none of those plaintiffs had authorized the LDF's efforts (or could be located), and no new plaintiff had ever joined the lawsuit.[7] The Board began to legitimately question who was actually driving the recent resurgence of litigation in the old Harris case, and who, if anyone, had authorized the LDF to file a contested motion seeking coercive relief against the Board.

In its opposition to the Motion for Further Relief, the Board raised the issue of standing that the Court had noted the year before in its Minute Entry. In response the LDF filed a Motion to Substitute Named Plaintiffs (Rec. Doc. 228, Motion to Substitute) in which the LDF sought to rectify any problems with standing by putting an actual plaintiff before the Court to move for the relief that the LDF was seeking with respect to the FWE school.

By the time that the Court issued its ruling on the Motion for Further Relief, the relief being sought with respect to FWE was already moot because the Board had voted to close the school prior to the start of the 2025-26 school year. (Rec. Doc. 237, Order and Reasons at 11). But the Court explained that even if the issue of closing FWE had not been moot, the Court was without subject matter jurisdiction to proceed on the Motion for Further Relief because the LDF was not acting on behalf of an actual plaintiff with Article III standing to move to close the FWE school. (*Id.* at 11). The LDF had

---

[7] It is unknown whether any of the original Harris plaintiffs are alive today.

moved for relief on behalf of "Plaintiffs," who purported to be Hermon Harris, Jr. and his co-plaintiffs from the original lawsuit filed in March of 1963. But neither Hermon Harris, Jr. nor any co-plaintiff of his from 1963, was actually before the Court pursuing the relief prayed for, and even if those original plaintiffs were alive and could be located, it was far from clear that they would satisfy the requirements of Article III standing. (*Id.* at 12).

"Plaintiffs" was essentially an empty collective label. The Court explained:

> To the Court's knowledge, desegregation cases do not present an exception to the requirement for legal standing, which goes to subject matter jurisdiction in federal court. There can be no legal standing without an actual plaintiff. The issue is not whether the *Harris* plaintiffs from 1963 had legal standing to pursue the relief that they sought to obtain 61 years ago. Surely, they did. But the *Harris* plaintiffs are not before the Court at this time so the issue of their standing to pursue the relief that they sought in 1963 is irrelevant to the current matters pending in 2024. The fact that a desegregation order that remains extant was entered in litigation that the *Harris* plaintiffs pursued 61 years ago does not create a perpetual "nominal" plaintiff whose name a legal non-profit can invoke when trying to obtain coercive relief in a federal court. It likewise does not create standing in perpetuity. It is undisputed that the extant *Harris* orders and decrees continue to bind the Board, and those orders continue to inure to the benefit of the school children in the parish. But when coercive relief is sought in 2024 based on an alleged violation of those orders/decrees—and to be sure the coercive relief being sought by the LDF is very specific—there must be an actual plaintiff before the Court on whose behalf that relief is being sought and that plaintiff must have standing. No plaintiff, means no standing and therefore no subject matter jurisdiction in federal court.

(Rec. Doc. 237, Order and Reasons at 13-14).

The LDF is a legal non-profit organization that provides legal representation to aggrieved parties. It is not itself an aggrieved party with a claim or injury of its own to pursue. But without an actual client in the case to represent, the LDF was essentially acting on its own to close the FWE school, which legally it cannot do. The LDF, who appeared to be the real party in interest, cannot litigate a matter as if it were a party by

claiming to act for "Plaintiffs" when in fact there was no actual plaintiff before the Court.

And the LDF's Motion to Substitute did nothing to resolve the absence of an actual plaintiff because none of the individuals that the LDF was proposing as plaintiffs could satisfy the requirements for Article III standing with respect to the FWE controversy.[8] (*Id.* at 14). None of the proposed plaintiffs could claim any particularized injury in fact from the Board's ongoing operation of the FWE school because none of them had children that actually attended the FWE school. (Order and Reasons at 16). Thus, the Court denied the LDF's Motion to Substitute. (*Id.* at 17).

One of the proposed plaintiffs from the Motion to Substitute that the Court denied was Ms. Geraldine Watkins. Ms. Watkins is the subject of the LDF's new Motion to

---

[8] To establish Article III standing, the plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Perez*, 45 F.4th at 821 (citing *TransUnion*, 594 U.S. at 423). Injury in fact is the "[f]irst and foremost" of standing's three elements. *Spokeo*, 578 U.S. at 338 (quoting *Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 103 (1998)). To establish injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (citing *Lujan*, 504 U.S. at 560). A "concrete" injury must be "*de facto*," which means that it must actually exist. *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)). For an injury to be "particularized," it "must affect the plaintiff in a personal or individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

Standing ensures that the plaintiff is not a mere bystander to the dispute but instead has a "personal stake" in it. *Alliance for Hippocratic Med.*, 602 U.S. at 379 (citing *TransUnion*, 594 U.S. at 423). The standing doctrine serves to protect the "autonomy" of those who are most directly affected so that they can decide whether and how to challenge the defendant's action. *Id.* at 379-80 (citing *Valley Forge Christian College v. Americans United for Separ. of Church & State, Inc.*, 454 U.S. 464, 473(1982)).

Further, the plaintiff must establish the elements of standing for each claim being made and for each form of relief being sought. *Perez*, 45 F.4th at 821 (quoting *TransUnion*, 594 U.S. at 431). For example, the plaintiff may have standing to pursue damages (a remedy that constitutes compensation for injuries suffered in the past) but not injunctive relief (a remedy that is prospective in nature) or vice versa. *Perez*, 45 F.4th at 824; *see TransUnion*, 594 U.S. at 431 (citing *Davis*, 554 U.S. at 734; *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). When a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury. *Alliance for Hippocratic Med.*, 602 U.S. at 381 (citing *Clapper*, 568 U.S. at 409).

Substitute, which is currently before the Court and is addressed below.

## II.

### Motion to Substitute Named Plaintiffs (Rec. Doc. 263)

The LDF moves once again to substitute Ms. Geraldine Watkins in place of the original Harris plaintiffs so that she can represent the class on whose behalf this lawsuit was originally filed in 1963.[9] Ms. Watkins is black, she resides in the parish, and is the great-grandmother of a minor child who is black (J.W.) and who currently attends East St. John High School. The LDF contends that like the original Harris plaintiffs, Ms. Watkins seeks relief on her own behalf and on behalf of her minor great-grandchild and on behalf of all other black parents and children in St. John Parish, Louisiana who are similarly situated and affected by the actions and policies of the Board. The LDF advises that it is necessary to allow Ms. Watkins to substitute in as a named class representative in order to litigate all remaining aspects of this ongoing school desegregation case. The LDF points out that without a new plaintiff the Court will not be able to provide the relief sought.

The LDF's position is grounded on the contention that the Harris case should be treated as a class action even if no evidence of a formal certification order has been

---

[9] The Court does not reference "Plaintiffs" as the movant but rather identifies the LDF as the movant. As the Board has pointed out, the LDF and local counsel continue to file motions purporting to be on behalf of "Plaintiffs" even though there is no plaintiff currently before this Court that those attorneys represent, and it is unclear with whom the moving attorneys actually have an attorney-client relationship, if anyone.

The Board goes so far as to ask why the LDF is having such a hard time finding local clients to be the face of its lawsuit. The Board posits that it's because the LDF wants the Court to force a majority black school board, in a predominately black parish, with a black superintendent, all black administrators, and all but one black school principal to do things that the local black community does not want. (Rec. Doc. 266, Opposition at 2).

uncovered to date. The LDF contends that *Graves v. Walton County Board of Education*, 686 F.2d 1135, 1138 (5th Cir. 1982), supports its position, not only that the Harris case should be treated as a class action even in the absence of a formal certification order, but also that when a named class representative's claims become moot, a plaintiff class is entitled to substitute a new representative in order to continue litigating the case. And since there is no dispute that the original named plaintiffs in Harris no longer have children who attend the St. John the Baptist Parish Schools (and none of the minor Harris plaintiffs currently attend school in the parish), it is therefore necessary and appropriate to substitute a named plaintiff to represent the class of black children attending the St. John the Baptist Parish Schools and their parents, on whose behalf this lawsuit was brought when it was filed in 1963.

In opposition, the Board continues to dispute that this case should be treated as a class action because there is no evidence that the district court ever certified the Harris case as a class action. The Board argues that the Harris case has been moot for nearly half a century, and because there was never a formal certification order entered in the case (or certainly not one that can be located), substitution of a new plaintiff is not the appropriate procedural vehicle for the LDF to rely upon to bring in a new plaintiff but rather intervention (although the Board does not concede that Ms. Watkins satisfies the requirements for intervention either). The Board argues that Ms. Watkins lacks standing to pursue any relief that could possibly be sought because she has no legally protected interest to protect with respect to the Board's actions.

In *Graves v. Walton County Board of Education*, the Fifth Circuit held that the desegregation case before it should be considered as a class action even though there

was nothing in the record that would indicate that the case was formally certified as a class action. 686 F.3d at 1138. The court noted that in desegregation cases the mootness problem may constantly arise because of protracted litigation and the eventual graduation from the school system of the original named plaintiffs. *Id.* The claims of the original *Graves* plaintiffs were certainly moot but the appellate court held that new plaintiffs should have been allowed to substitute as named parties so that the case could remain alive and not be dismissed on the basis of mootness. *Id.* In determining that the case should be considered as a class action even in the absence of a formal certification order, the appellate court examined the record below and cited the numerous instances in which the district court and the parties had treated the case as if it were proceeding on a class basis. *Id.* at 1139. The *Graves* record evinced the class action status of the case even without a formal certification order. *Id.* at 1140.

Although what is available of the Harris record does not evince class treatment as strongly as the *Graves* record did, the Court is persuaded that for purposes of the Motion to Substitute currently before it, the issue of class treatment is irrelevant. The question of whether the Harris case should be treated as if it was adjudicated as a class action was raised by the LDF in conjunction with the Motion for Further Relief, because the LDF seemed to believe that class status would ease the burden of finding a new plaintiff with Article III standing. (Rec. Doc. 237, Order and Reasons at 14 n.7). It does not.

The Court will assume for the sake of argument that Harris was a class action, and that the class was defined as the parents of students (and the students themselves) who attended the unconstitutional biracial de jure school system that the Board was

operating in 1963. The named plaintiffs in Harris undoubtedly had Article III standing to pursue the injunctive relief that they sought when they filed suit. The Harris litigation was successful and resulted in the desegregation order(s) entered in the case that remain in force today. The claims of the original Harris plaintiffs are therefore moot given the relief that they obtained. Contrary to the LDF's argument, there is no ongoing litigation in this 62 year old lawsuit for the claims that were filed in 1963, and there are no remaining aspects of Harris to litigate, except perhaps when a specific individual is injured when the Board violates the desegregation order(s) entered in the case. The Harris case is not in need of a new class representative in 2025 to pursue class-wide relief in Harris because class-wide relief in Harris has been rendered, and those claims are concluded.[10]

What remains are extant desegregation orders and decrees that continue to bind the Board and that remain in force notwithstanding that the original Harris claims are moot. Thus, when the Board violates some aspect of those extant desegregation orders and decrees—like for instance what was alleged with respect to the FWE school—an aggrieved plaintiff with Article III standing may file a new lawsuit to obtain relief based on the violation. Or that same plaintiff may instead move to intervene in the old Harris case but this latter procedural path does not eliminate the requirement for Article III standing. When a plaintiff seeks relief for the Board's violation of the Harris orders she is not doing so on a class-wide basis to pursue class relief in Harris. That part of the case is moot. Substituting as a class representative to stand in the shoes of the Harris

---

[10] Ms. Watkins is not a member of the Harris class. She is neither the parent nor legal guardian of J.W.

plaintiffs is not a means to circumvent the requirement of Article III standing.

Ms. Watkins lacks Article III standing to either substitute in as a named class representative or to intervene in this lawsuit or to file her own lawsuit based on a violation of the Harris orders. Ms. Watkins is not J.W.'s parent or legal guardian so she lacks procedural capacity under state law to pursue legal relief on behalf of J.W. Ms. Watkins likewise has no relief that she can obtain for herself because she does not have a child in the school system. The LDF's motion to substitute mentions only "relief" to be sought and does not describe what specific relief the LDF would seek if Ms. Watkins was allowed to join the lawsuit. The LDF's suggestion that Article III standing would exist if no specific relief is being sought (compared to when the LDF sought specific relief with respect to the FWE controversy) is mistaken. There is no Article III standing in the abstract.

The LDF's motion to substitute is denied.

**Motion to Dismiss the Duhon Case and Vacate All Orders (Rec. Doc. 251)**

The Board moves to dismiss the Duhon case as moot and to have the Court vacate all of the extant orders entered in Duhon. The Board argues that the Duhon plaintiffs lacked standing when they filed their lawsuit 35 years ago, and that relief should not have been granted to them.

The Board's motion is denied. The Duhon plaintiffs were not required to intervene in the Harris case in order to seek relief based on violations of the Harris orders. They filed a new lawsuit and that was permissible. The case is moot and has been closed for decades. Dismissing the case would do nothing to vacate the orders that Judge Livaudais entered.

**Cross-Motion to Clarify Representation, Dismiss the Harris Case, and Vacate All Orders (Rec. Doc. 254)**

The Board's motion to dismiss Harris is denied. The Harris matter has been closed for decades and the Harris claims are moot. But dismissing the Harris matter will not lead to vacating the orders and decrees entered in Harris. If the Board is persuaded that it has met the legal requirements for vacating the desegregation orders in place then it can move for that relief.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion to Substitute Named Plaintiffs (Rec. Doc. 263)** filed by the NAACP Legal Defense and Educational Fund, Inc. ("the LDF") and local counsel, Mr. Gideon Carter, is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss the Duhon Case and Vacate All Orders (Rec. Doc. 251)** and **Cross-Motion to Clarify Representation, Dismiss the Harris Case, and Vacate All Orders (Rec. Doc. 254)** filed by the St. John the Baptist Parish School Board are **DENIED**.

July 3, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE